ROLAND L. BELSOME, Judge.
I,Insured brought an action for damages against his insurance agency and insurer, for failure to procure increases in the coverage limits for his commercial property. After a trial on the merits, the trial court found in favor of the insured and awarded general and special damages against the insurance agency. For the following reasons, we affirm in part and amend in part.
Prior to Hurricane Katrina, the buildings of Fin & Feather, L.L.C. and Fin & Feather Chalets, L.L.C., businesses owned and operated by Kirk Prest and located in Plaquemines Parish, were insured by Louisiana Citizens Property Insurance Corporation (“Citizens”). On October 30, 2004, *732 Prest renewed his commercial property insurance policy with Citizens through the insurance agency of Kennedy, Lewis, Ren-ton & Associates, Inc. (“KLR”). At that time, the policy had dwelling limits of $100,000.00 on building no. 1, $70,000.00 on building no. 2, and $80,000 on building no. 3.
Subsequently, on July 7, 2005, Prest contacted KLR to increase the coverage limits on the property, specifically as to building no. 1 from $100,000 to $150,000, and as to building no. 3 from $80,000 to $125,000. Prest requested the increases after making improvements and repairs to his property because it was previously 12damaged by Hurricane Ivan in 2004. Later, on August 18, 2005, Prest contacted KLR again to increase the coverage on the property, namely on building no. 1 from $150,000 to $215,000, and on building no. 2 from $70,000 to $100,000. •
On August 29, 2005, the buildings were extensively damaged by the catastrophic winds of Hurricane Katrina. Shortly thereafter, Prest notified Citizens of his losses and filed a claim to recoup the cost of the damages sustained. The commercial property was inspected and the damages were purported to be covered under the policy. However, on May 10, 2006, Prest was notified by Citizens that the increases of the coverage limits requested for the insurance policy were not in force on the date of loss due to the requests being received on November 18, 2005, which was after the date of loss. As a result, only a partial payment for $217,-423.04[1] was issued for the wind damage that destroyed Prest’s buildings instead of the total $540,000.00 of coverage he believed he had in place.
Moreover, on March 10, 2006, seven months after the last request for an increase in the coverage limits for the property was made, KLR sent a follow-up letter to Citizens inquiring about the status of both of the requested increases. In response to KLR’s inquiry, on May 10, 2006, Citizens responded to KLR maintaining the same position that it had taken with Prest, that the requests were not received until November 18, 2005, which was after the date of loss.
Accordingly, on August 28, 2006, Prest instituted an action for damages against Citizens, KLR, and Insurance Underwriters, Ltd.[2] for breach of contract, alleging Citizens was arbitrary and capricious in refusing to pay the entire amount | sdue to its insured, and this delay was caused by KLR’s failure to procure the requested increases timely made by the insured, and KLR’s failure to notify the insured that the requested increases were rejected or not completed.
Prior to trial, Citizens tendered the remaining amount of the disputed coverage, specifically $322,576.96, to Prest on December 10, 2008 thereby settling all claims between the parties. After a trial on the merits, the trial court ruled against the remaining defendant, KLR. The judgment awarded $75,000.00 in general damages and $137,386.44 in special damages[3] to Prest, Fin & Feather, L.L.C., and Fin & *733 Chalets, L.L.C. for delay in payment and attorney’s fees and costs expended by Prest in their claim against Citizens. This appeal followed.
On appeal, KLR argues that the trial court erred 1) in finding it failed to use reasonable diligence in procuring the requested increases in coverage; 2) in allowing double recovery; 3) in awarding special damages not specifically pled; and 4) in awarding general damages or in the alternative, awarding excessive general damages.
On review, the appellate court will not disturb the lower court’s findings of fact absent a showing that it was clearly wrong or manifestly erroneous. Christy v. McCalla, 2011-0366, p. 9 (La.12/06/11), 79 So.3d 293 (citing Fontenot v. Patterson Ins., 09-0669, p. 8 (La.10/20/09), 23 So.3d 259, 267).
In Louisiana, an insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to 14obtain the requested insurance. Karam v. St. Paul Fire & Marine Ins. Co., 281 So.2d 728, 730 (La.1973).[4] In an action to recover damages for the insurance agent’s failure to use reasonable diligence, the plaintiff must prove (1) there was an undertaking by the insurance agent to procure insurance, (2) the failure of the agent to use reasonable diligence to obtain the requested coverage and to notify the client of the absence of coverage, and (3) actions by the agent which warrant the client’s assumption that he was insured in the desired amount. Taylor v. Sider, 99-2521, p. 3 (La.App. 4th Cir.5/31/00), 765 So.2d 416, 418.
KLR asserts it used reasonable diligence in obtaining the insurance coverage increases requested by Prest. At trial Lisa Murden, an employee of KLR, testified that KLR attempted to increase the coverage limits for Prest’s property on two separate instances during the summer of 2005, prior to Hurricane Katrina. In each instance she assured Prest that the coverage would be in place on the day following the postmarked date.
On July 7, 2005, Ms. Murden sent a request to increase the coverage limits to Citizens via certified mail, and according to the confirmation receipt a Citizens’ employee signed for the letter which contained the request for an increase in the coverage limits. Once Citizens received the request, the duty to procure that coverage in a timely fashion rested with them. This Court finds that the certified mailing of the request and confirmation of its receipt is reasonable diligence in procuring the requested increases on that date. Thus, the record establishes, as to |sthe first request, that KLR did in fact use reasonable diligence to procure the requested increase in coverage limits. Thus, we find the trial court erred in finding that KLR breached its duty as to the first request.
However, we do not find that KLR used this same diligence in the second request made by Prest on August 18, 2005. As to that request, Ms. Murden testified that the second request made on August *734 18, 2005 was sent via regular U.S. mail to Citizens; however, there is no evidence to support that KLR verified the receipt of the request nor is there any evidence to support that Citizens actually received the request. In addition, Ms. Murden testified that generally KLR would follow-up on the status of the request for increases during hurricane season within 10 days from the date of the request due to Citizens having a tendency to delay on processing this type of request. Yet, according to her testimony, KLR did not follow-up on the request. Under these circumstances, we find that reasonable diligence on the part of the agent warrants the verification that the request was received.
Applying those principles outlined in Taylor to the facts of this case, we find that KLR failed to use reasonable diligence in procuring the second request for coverage increases, and failed to advise Prest that the increased coverage was not procured. Prest relied on KLR’s representation that the increases would be in effect the day after the postmarked date of the request. At that point, Prest fully believed he was covered for those amounts in the event of a loss. If a duty is imposed by the relationship of the parties and the duty is breached by an act or omission of a party then that party is liable for such acts of omission or commission. Taylor, supra. Accordingly, we do not find that the trial court erred in its findings that KLR breached its duty to Prest, as to the second requested | (¡increase, by failing to procure the coverage and later by not promptly notifying him that the coverage was not in place. Hence, KLR is liable to Prest for economic damages that he sustained due to that breach. Because the economic damages sought are directly related to the recovery of the insurance proceeds rather than the property damage, we do not find that awarding such damages results in double recovery.
Additionally, the trial court determined that KLR’s breach of duty owed to Prest resulted in more than mere economic damages. At trial, Denise Prest testified as to the effect the process of settling the property damage claim had on her and Mr. Prest. KLR asserts that a spouse’s testimony as to her husband’s mental and physical state is insufficient to support a finding of mental distress. We disagree. Mrs. Prest had firsthand knowledge of the effects this process had on Mr. Prest due to their daily interactions with one another as husband and wife; and Mrs. Prest’s ability to observe changes in Mr. Prest’s mental and physical state. According to her testimony, she described Mr. Prest as being very stressed causing him to have sleepless nights, suffer with depression and being on edge towards her and their children. She also testified that Mr. Prest sought medical treatment for his mental state through his general practitioner, and was prescribed medication for his condition. This evidence was not contradicted.
The difficulties and emotional turmoil suffered by Prest were certainly evident from the testimony provided. Additionally, even though medical attention was not sought from a mental health professional, there was some indication that Prest’s general practitioner provided prescriptive medication for the treatment of his for depression, inability to sleep, and his stressed state. On cross-examination Mrs. Prest responded to a question regarding professional help received by her 17husband for mental anguish stating, “we went in to see a regular general practitioner, and, you know, minor things were prescribed.” The record supports that Prest experienced more than the normal degree of worry and distress that would be associated with having one’s property damage *735 claim settled. The increased mental anguish was caused by the shock and disbelief associated with the destruction of his property due to the storm coupled with finding out that he did not have the insurance coverage he had requested. Prest had responsibly taken steps to ensure his business and family would be financially protected in the event a hurricane or other occurrence damaged or destroyed his property, but due to the mishandling of his request he did not see any of the additional proceeds until more than three years after his loss.
Generally, mental anguish is associated with physical injury, however the Louisiana Supreme Court has recognized that mental anguish can result without physical injury. Moresi v. State Through Dept. of Wildlife & Fisheries, 567 So.2d 1081, 1095-1096 (La.1990). The Moresi court found that the common factor in the nonphysical damage mental anguish cases is that there is an “especial likelihood of genuine and serious mental distress, arising from special circumstances.” Id. at 1096. Given the level of mental anguish that was testified to together with the duration of time Prest had to endure the additional stress, this Court finds the award of general damages by the trial in the amount of $75,000.00 was appropriate.
KLR is also disputing the award of special damages. Special damages are those which can be fixed to pecuniary certitude. Stevens v. Winn-Dixie of Louisiana, 664 So.2d 1207 (La.App. 1 Cir. 1995). The Stevens court acknowledged the general rule that a trial court may not award special damages | ¿which have not been specifically plead. Id. at 1213. The court went on to explain that the “purpose of the specificity requirement is to avoid the imposition of surprise upon the defendant.” Id.
In the instant case, the petition prayed for judgment in Prest’s favor “for reasonable attorney fees to the extent provided by law.and all damages that are reasonable in the premises, for legal interest thereon and for such other legal general and equitable relief as is appropriate under the circumstances.” Although the petition failed to specifically allege special damages, during the discovery process Prest provided KLR with documents outlining the attorney fees and calculations showing interest. The attorney fees that were requested were for the action against Citizens, resulting from KLR’s failure to procure the requested increase in coverage. Prest did not seek attorney fees for the litigation against KLR. Further, La. C.C.P. art. 1154 provides for the expansion of pleadings to conform to the evidence presented.
We do not find KLR was prejudiced by surprise by Prest seeking special damages. As such, we find no error in the trial court awarding the special damages. However, we do find that based on our previous determination regarding KLR’s reasonable diligence in its first request for an increase, the special damages award for delay must be reduced. Originally, the trial court awarded $74,411.89 for that element of damage. Each request for increased coverage was for a total of $95,000.00. Thus, KLR should only be liable for the delay of $95,000.00 rather than $190,000.00. Accordingly, the damages due to delay are reduced to $37,205.95.
For the foregoing reasons, the judgment of the district court is amended to | ^reflect the reduction in special damages from $137,386.44 to $100,180.40; and the judgment is affirmed as to the general damage award of $75,000.
AMENDED AND AFFIRMED AS AMENDED

. As per policy provisions, Prest was penalized for being underinsured.

. On December 19, 2007, Insurance Underwriters filed a partial motion for summary judgment, which was granted by the trial court on April 3, 2008, dismissing all claims against it with prejudice due to Insurance Underwriters not being Prest's agent until after the date of loss.

.Special damages were rendered as follows:
Damages due to delay. $74,411.89
Contingency attorney fees (17%) for claims against Citizens. $54,838.08
Hourly fees ($ 100/hr) and costs for claims against Citizens. $ 8,136.47

. (citing C.C. 3002 and 3003); Kieran v. Commercial Union Insurance Company of New York, 271 So.2d 889 (La.App. 4th Cir. 1973); Hight v. Stewart, 265 So.2d 640 (La.App. 2d Cir. 1972); Bordelon v. Herculean Risks, Inc., 241 So.2d 766 (La.App. 3d Cir. 1970); Shrv Teletype Coin Exchange, Inc. v. Commercial Union Insurance Company of New York, 191 So.2d 208 (La.App. 2d Cir. 1966); Arceneaux v. Bellard, 149 So.2d 444 (La.App. 3d Cir. 1963); Brown v. Stephens Buick Company, 139 So.2d 579 (La.App. 4th Cir.1962).