CLARK, Justice.
_JjWe granted this writ primarily to determine whether the award of mental anguish damages was justified under the facts of this matter. After our review, we find the trial court abused its discretion in awarding general damages, and reverse that portion of the damage award.
FACTS AND PROCEDURAL HISTORY
In October 2008, Kennedy, Lewis, Ren-ton & Associates, Inc. (“KLR”), an. insurance agency in southeastern Louisiana, secured a property insurance policy with Louisiana Citizens Property Insurance Corporation (“Citizens”) for Kirk Prest (“Mr. Prest”) on property located in Boothville, Louisiana, in Plaquemines Parish. The named insureds on the policy were Mr. Prest, individually, and Fin & Feather, L.L.C. The property insurance covered a small chalet and several boatsheds which were used to operate a hunting and fishing business. The boat sheds and chalet were run by two different companies, Fin & Feather, L.L.C. and Fin & Feather Chalets, L.L.C. (collectively referred to in this opinion, with Mr. Prest, as “Plaintiffs”). Mr. Prest and his wife, Denise, are owners of both companies.
Hurricane Ivan damaged Plaintiffs’ buildings in 2004. Plaintiffs subsequently made repairs and undertook new construction on the property insured by Citizens. Because they were penalized for being un-derinsured for their losses in [gHurricane Ivan, Plaintiffs wanted to ensure their property was properly covered by sufficient amounts of insurance in the future.
Four buildings on the property were covered by the insurance policy. In July 2005, Plaintiffs’ policy insured Building 1 for $100,000, Building 2 for $70,000, Building 3 for $80,000 and Building 4 for $100,000. The total amount of insurance coverage on the property was $350,000.
As each phase of reconstruction and expansion was completed, Plaintiffs requested increased coverage on their buildings. On July 7, 2005, Plaintiffs requested an increase in the coverage on Building 1 from $100,000 to $150,000 and on Building 3 from $80,000 to $125,000. In response, Lisa Murden (“Murden”), an insurance agent with KLR, sent a written request for the increased coverage to Citizens by certified mail. There was a mistake on the form sent requesting increased coverage, in that the words “renew policy” were typed in rather than “increasing coverage.” However, the comments immediately below correctly described the increased amounts of coverage.on the buildings requested by the policy holder.
According to Citizens’ guidelines, an increase in insurance coverage on an existing policy could only be obtained by a written request sent by U.S. mail. Coverage was considered bound by Citizens the day after the letter was postmarked. The only restriction on this guideline was Citizens would not consider coverage bound if the written request was sent by mail after a hurricane entered the Gulf of Mexico. For an increase in an existing insurance policy, Citizens did not require a payment *1083 to accompany the request. Instead, Citizens would bill the policy holder for the increased insurance coverage 30-60 days later. However, for a new policy or the renewal of a policy, Citizens required payment when the request was submitted;
IsSince KLR sent the July 2005 request for increased insurance coverage by certified mail, KLR received confirmation by mail indicating Citizens received and signed for the written request. From her prior dealings with Citizens, Murden knew Citizen’s receipt of the request alone would not immediately result in a policy change. She knew she would have to send multiple written communications to ensure Citizens made the policy changes requested, although the coverage would be considered bound the day after the first letter was postmarked. For this reason, KLR had a policy to follow up an initial request to Citizens within 30 days. No follow-up was conducted by KLR on the July 2005 request for increased coverage because KLR had insufficient staff to do so. The certified mail receipt confirmed to Murden that the increased coverage was bound as of July 8, 2005, the day after the request was postmarked, in accordance with Citizen’s normal guidelines.
On August 18, 2005, Plaintiffs completed further additions and renovations to the buildings on their property and requested a further insurance policy increase on Building 1 from the recently-requested, increased amount of $150,000 to $215,000 and from $70,000 to $100,000 on Building 2. A KLR form reflects this request with a stated effective date of August 22, 2005. Murden sent this request to Citizens by regular mail. KLR conducted no followup. Although she had not heard anything from Citizens, Murden told Plaintiffs they had insurance coverage in the amount of the two requested increases.
Hurricane Katrina hit southeast Louisiana on August 29, 2005, eleven days after the August 18, 2005 policy change request. The storm severely damaged or destroyed the boat sheds, and the chalet sustained severe damage. At that time, Plaintiffs believed they had a total of $540,000 in insurance coverage on their property, as follows: Building 1-$215,000; Building 2-$100,000; Building 3 — $125,000; and Building 4-$100,000. Murden believed they had coverage in those |4amounts, as well. Murden had not received any indication from Citizens that Plaintiffs did not have the insurance coverage in the amounts they requested.
After Hurricane Katrina, Murden sent several follow-up requests, on November 7, 2005, January 20, 2006, March 10, 2006 and May 8, 2006, regarding the two policy coverage increases requested by Plaintiffs in July and August 2005. Murden sent to Citizens all of KLR’s documentation with regard to the two increased coverage requests, including the file copies of the requests themselves, and the certified mail receipt showing Citizens received the first requested increase. During this time, Plaintiffs timely reported the damage to their insurer, which inspected the property and determined the losses were covered under the policy.
On May 6, 2006, Citizens sent a letter to Plaintiffs, advising them the policy had been reviewed and the requested increases in the policy limits would not be honored. Citizens claimed it first became aware of the two coverage increase requests on November 18, 2005, after Hurricane Katrina, so the policy limit increases for the losses sustained in that storm were denied. According to Citizens, Plaintiffs only had the original $350,000 worth of coverage on their property'. In addition, Citizens determined Plaintiffs were again subject to the underinsured penalty, so that Citizens paid only $217,423.04 on the claim.
*1084 Plaintiffs filed suit on August 28, 2006 against Citizens, seeking payment of the full policy amounts, including the amount of the requested coverage increases, attorney fees and penalties. In the alternative, and in the event adequate insurance was not found to be in place on the property at issue, Plaintiffs also sought recovery from KLR. Plaintiffs claimed KLR was negligent for its inaction in failing to procure the requested insurance coverage from Citizens or another insurer, and for its inaction in failing to notify Plaintiffs that their timely requests for coverage and coverage increases had been rejected or were not otherwise 1 .^completed. Plaintiffs claimed they reasonably relied upon the representations made by KLR which gave them the reasonable belief the properties were properly insured.[1]
After engaging in pretrial discovery, Plaintiffs and Citizens entered into a settlement agreement on December 10, 2008. Without admitting liability, Citizens settled the claims against it for $322,576.96. This amount reflects the difference between the $217,423.04 Citizens initially paid Plaintiffs, and the $540,000 which Plaintiffs claimed as the correct limits of their property insurance policy. Thus, Plaintiffs ultimately received a total of $540,000 from Citizens. In addition to their agreement to dismiss their current claims against Citizens in the instant lawsuit, Plaintiffs also agreed to give up their rights to participate in four class action lawsuits filed against Citizens following Hurricane Katrina. Further, Plaintiffs compromised a possible claim for attorney fees and penalties against Citizens. Plaintiffs specifically reserved their right to pursue the negligence claims against KLR.
After trial on the merits against KLR, the trial court rendered judgment in favor of Plaintiffs, finding KLR was negligent in its handling of its clients’ requests for coverage increases. The judgment awarded to Mr. Prest, individually, the amount of $75,000 in general damages for the frustration, inconvenience and mental anguish caused by KLR’s negligence. The judgment awarded special damages to Plaintiffs in the amount of $137,386.44 for the attorney fees and costs which they expended in connection with their suit against Citizens, and for the delay in receiving the total amount of the insurance policy limits.
KLR appealed both the finding of liability and the award of damages. The appellate court agreed with' the trial court’s finding of negligence in part, holding | [¿here was manifest error in the trial court’s finding the insurance agency failed to exercise reasonable diligence with regard to the July 2005 request for increased coverage. The court of appeal reduced the special damages awarded for the delay in receiving the insurance policy limits to $37,205.95. Consequently, the court of appeal amended the trial court’s judgment to reduce the special damages from $137,386.44 to $100,180.40. The trial court’s judgment was affirmed as amended. Prest v. Louisiana Citizens Property Insurance Corp., 2011-0851 p. 8-9 (La.App. 4 Cir. 2/1/12); 85 So.3d 729, 735.
We granted KLR’s writ, primarily to determine the correctness of the trial court’s award of general damages. Prest v. Louisiana Citizens Property Insurance Corp., 2012-0513 (La.4/27/12); 85 So.3d 1280.
LAW AND DISCUSSION
KLR challenges both the remaining finding of negligence regarding the August 2005 request for increased insurance cov *1085 erage, and the award of general and special damages. We will separately address each of these arguments.

Negligence

KLR contends it used reasonable diligence in obtaining both of the requested increases in insurance coverage. The testimony established Citizens required a request to increase policy limits to be in writing and such policy requests could only be communicated by U.S. mail. There was no requirement to send such requests by certified mail, either by Citizens or KLR. KLR sent the August 2005 request by regular mail, but did not have sufficient time to follow up on the request within 30 days, as was KLR policy. KLR argues it is not responsible for Citizens’ inexcusable three-year refusal to recognize that the requested increases in this case were in place prior to Hurricane Katrina, and maintains the fault lies with Citizens, not with KLR. KLR contends Citizens ultimately acknowledged the requests for increased coverage were valid and agreed to pay the increased policy limits. 1 ./Therefore, according to KLR, Plaintiffs have no valid claim to raise. Insofar as Plaintiffs might have had further claims against Citizens for attorney fees or penalties, KLR points out Plaintiffs compromised those claims with the party truly at fault in their settlement with Citizens.
In written reasons for judgment, the trial court set out the factual findings for its decision. The trial court found there was an undertaking by the insurance agency to procure the requested insurance. The trial court additionally found KLR failed to use reasonable diligence to obtain the requested increases and to notify Plaintiffs promptly of the absence of the increased coverage. Finally,-the 'trial court found Plaintiffs proved there were actions by the insurance agent which warranted their assumption the properties were insured in the desired amounts. The trial court faulted Murden’s failure to send the August 2005 request by certified mail, as she had the July 2005 request. In addition, the trial court noted the lack of any follow-up on either request.
The court of appeal agreed with the trial court’s finding of negligence in part, but distinguished between the manner in which the two requests were communicated to Citizens. The court of appeal found KLR acted with reasonable diligence in placing the July 2005 coverage increase request, but failed to do so for the August 2005 request. The court of appeal noted KLR received a confirmation receipt for the July 2005 request, proving ■ Citizens received the communication. “Once Citizens received the request, the duty to procure that coverage in a timely fashion rested with them.” Prest, 2011-0851, p. 4; 85 So.3d at 733. As for the August 2005 request, the court of appeal noted there was no evidence to support that KLR verified the receipt of the request nor was there any evidence to support that Citizens actually received the request. As to the August request, the court of appeal noted: “[ujnder these circumstances, we find that reasonable diligence on |sthe part of the agent warrants the verification that the request was received.” Prest, 2011-0851, p. 5; 85 So.3d at 734.
We review the factual findings of the trial court supporting its finding of negligence for manifest error. Christy v. McCalla, 2011-0366, p. 9 (La.12/6/11); 79 So.3d 293, 299.
An insurance agent has a duty to his client to procure insurance coverage, as explained in Karam v. St. Paul Fire & Marine Ins. Co., 281 So.2d 728, 730-731 (La.1973):
An insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable *1086 diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested insurance. The client may recover from the agent the loss he sustains as a result of the agent’s failure to procure the desired coverage if the actions of the agent warranted an assumption by the client that he was properly insured in the amount of the desired coverage.
To recover for losses resulting from an insurance agent’s failure to procure insurance coverage, the plaintiff must establish: “(1) an undertaking or agreement by the insurance agent to procure insurance; (2) failure of the agent to use reasonable diligence to obtain insurance and to notify the client promptly of the absence of coverage; and (3) actions by the agent which warranted the client’s assumption that he was insured in the amount of the desired coverage.” Taylor v. Sider, 1999-2521, p. 3 (La.App. 4 Cir. 5/31/00); 765 So.2d 416, 418, writ denied, 2000-2004 (La.10/6/00); 771 So.2d 86; citing Opera Boats, Inc. v. Continental Underwriters, Ltd., 618 So.2d 1081, 1085-1086 (La.App. 1 Cir.1993).
Both parties agree KLR attempted to procure insurance for Plaintiffs with Citizens and that Murden, KLR’s employee, made assurances to Plaintiffs which warranted their assumption they were insured in the amount.of the requested increased coverage. The only dispute is whether. KLR was reasonably diligent in obtaining the insurance or in notifying Plaintiffs no coverage was obtained.
| aWe agree with the court of appeal’s analysis. Whether reasonable diligence was exercised in this case depends on the manner in which KLR made the two requests. See Wooley v. Lucksinger, 2009-0571, p. 51 (La.4/1/11); 61 So.3d 507, 555 (“when an appellate court finds that ... manifest error of material fact was made in the trial court, it is required, whenever the state of the record on appeal so allows, to redetermine the facts de novo from the entire record and render a judgment on the merits.”). KLR received a confirmation receipt in the mail which showed Citizens received the July 2005 request for increased coverage. Pursuant to Citizens’ policy, no matter how many follow-ups it took before. Citizens put the policy amendment into effect, KLR could, with confidence, assure its client that coverage was bound as of the day after the request had been postmarked. The fact that Citizens failed to immediately honor that request pursuant to its own policies, which surprised Murden, reflects Citizens’ failure to honor its contract with Plaintiffs, and not KLR’s failure to exercise reasonable diligence.[2]
However, we find no manifest error in the decision of both lower courts that KLR failed to exercise reasonable diligence to request increased insurance coverage for their client in August 2005. Although Citizens had a policy such requests were to be written and communicated by U.S. mail only, we find, under these facts, KLR had the duty to'ensure such requests were actually received. Without obtaining an indication that the insurance company actually received a request for a policy change, KLR would not know whether a request regarding a policy was ever communicated, nor would it be possible, or reasonable, for KLR to inform its clients *1087 that coverage was obtained under those circumstances.[3]
|inIn this case, testimony indicated the August 2005 request was, in all likelihood, lost, either in the mail or through a change in service providers who handled the processing of policy requests for the insurance company around the time of Plaintiffs’ damage claim. A post office box for the insurance company was located in the main post office in New Orleans; which flooded. In addition, Citizens had’ over 70,000 claims to process after Hurricane Katrina. The underwriting manager for Citizens testified a lot of mail was lost and requests were lost in the process.
Even without the catastrophic damage to the entire region, which affected all forms of communication and business, the fact remains that mail is occasionally lost. We find from the testimony that KLR could not prove the August 2005 policy request was mailed, much less that Citizens received the communication. Murden testified she placed the August 2005 policy increase request in the outgoing mail and assumed the request was mailed. Murden stated there was no other way for her to check on the binding of coverage; she was dependent on receiving confirmation from Citizens.
The underwriting manager from Citizens, Patricia Weidie (“Weidie”) testified she saw both requests in the Citizens’ claim file and both had been sent by certified mail. She later clarified she saw only copies of the requests, and not the originals. Her assertion both requests were sent by certified mail was denied by the sender, KLR. We note Weidie testified she had nothing to do with the investigation of the claim, or the negotiation of the settlement. Her only involvement in this matter was her recommendation the requested increases in policy limits be paid. No doubt, Weidie saw the documentation sent to Citizens by KLR after the hurricane.
In Under these circumstances, we find, as did the lower courts, that KLR failed to act with reasonable diligence in attempting to place the insurance requested in August 2005. KLR had no basis upon which it could reasonably assure its client that coverage had been placed.
Moreover, KLR had the additional duty to notify its client of the failure to obtain the requested insurance. Testimony established there was approximately a week between the time Plaintiffs requested the second coverage increase on August 18, 2005 and the date Hurricane Katrina entered the Gulf of Mexico. During that time, Plaintiffs could have obtained insurance from another insurance company to ensure they were insured in the amount of coverage they desired.
We find no manifest error in the determination of the lower courts that KLR failed to exercise reasonable diligence in attempting to procure insurance coveragé for its clients in August 2005, and was, therefore, negligent in this regard.

Double Recovery

KLR contends Plaintiffs have recovered almost double the value of the property at issue. At trial, KLR produced documents showing Plaintiffs received $440,000 in flood insurance proceeds. Combining the proceeds of the flood insurance with the full limits of the Citizens’ policy, KLR asserts Plaintiffs have recovered $980,000 in insurance proceeds on property valued at only $540,000. KLR *1088 argues Plaintiffs are not entitled to more money from KLR.
An insured may recover under all available coverage, provided that there is no double recovery. Cole v. Celotex Corp., 599 So.2d 1058, 1080 (La.1992). The record shows there was no prohibited double recovery in this case. Plaintiffs insured their property against the hazards of both wind and water damage. The appraisal documents entered in evidence show the buildings on the property were damaged or destroyed by wind before the flood waters arose. Thus, Plaintiffs sustained both wind and water damage to their property and are entitled to recover |12under both policies. In addition, we note the flood insurance proceeds were made payable to both Plaintiffs and the bank which held a mortgage on the property. Mr. Prest testified at trial the' proceeds of the flood insurance policy were used to pay down the mortgage on the property. Mr. Prest also testified the combined amount of recovery from the flood insurance and the Citizens policy was insufficient to rebuild the buildings and restore the property to its pre-Hurricane Katrina condition. Plaintiffs did not improperly obtain a double recovery for their losses.
Moreover, the claims which Plaintiffs bring against KLR are not based on their insurance contract, but rather are based on KLR’s negligence in failing to obtain requested insurance coverage or to inform Plaintiffs they were not actually covered by the amount of insurance they requested. As such, KLR’s argument appears contrary to the collateral source rule. Under the collateral source rule, “a tortfeasor may not benefit, and an injured plaintiffs tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor’s procuration or contribution.” Bozeman v. State, 2003-1016, p. 9 (La.7/2/04); 879 So.2d 692, 698, citing Louisiana Dept. of Transp. and Dev. v. Kansas City Southern Ry., 2002-2349, p. 6 (La.5/20/03); 846 So.2d 734, 739. As explained in Bozeman, “the payments received from the independent source are not deducted from the award the aggrieved party would otherwise receive from the wrongdoer, and, a tortfeasor’s liability to an injured plaintiff should be the same, regardless of whether or not the plaintiff had the foresight to obtain insurance.” Id.., citing Kansas City Southern Ry., 2002-2349, p. 6; 846 So.2d at 739-740. “As a result of the collateral source rule, the tortfeasor is not able to benefit from the victim’s foresight in purchasing insurance and other benefits.” Id.
Thus, the monies received by the Plaintiffs from Citizens in their settlement does not shield KLR from the payment of damages for its negligence, if the Plaintiffs suffered additional damages. Therefore, the cases cited by KLR | ^regarding this assignment of error are inapplicable to the present case. We affirm the lower courts’ findings in this regard.

General Damage Award

KLR asserts the trial court abused its discretion in awarding general damages for mental anguish, urging the evidence adduced at trial was insufficient to support such an award. The trial court awarded general damages to Mr. Prest individually, but not to the two limited liability companies also named as plaintiffs.[4] The court of appeal affirmed this award, finding no abuse of discretion. The court of appeal found “[t]he record supports that [Mr.] Prest experienced more than the normal degree of worry and distress that would be associated with having *1089 one’s property damage claim settled.” Prest, 2011-0851, p. 7; 85 So.3d at 734-785.
Our review of the record discloses Mr. Prest has not alleged or proved that he suffered any bodily harm or property damage as a result of the insurance agent’s negligence. Instead, Mr. Prest seeks to recover general damages only on the basis that KLR’s ordinary negligence caused him mental anguish.[5] An award of damages is reviewed for an abuse of the trial court’s discretion. See La. C.C. art. 2324.1; Bellard v. Am. Cent. Ins. Co., 2007-1335, p. 29 (La.4/18/08); 980 So.2d 654, 674.
In Moresi v. State Through Dept. of Wildlife and Fisheries, 567 So.2d 1081, 1095 (La.1990), this court noted “[u]nder the general rule followed by the great majority of jurisdictions, if the defendant’s conduct is merely negligent and causes | i4only mental disturbance, without accompanying physical injury, illness or other physical consequences, the defendant is not liable for such emotional disturbance.” However, we also stated there have been deviations from this general rule in Louisiana jurisprudence. Id. at 1096. Although the factual situations of these deviations from the general rule vary, each has “in common the especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious.” Id.
Our review of the record convinces us KLR’s conduct was not such as to lead to the especial likelihood of genuine and serious mental distress. KLR’s conduct was merely negligent. Although there were obviously better methods for ensuring its clients’ requests for policy changes were communicated to their insurer, we cannot say KLR’s practice of depositing its clients’ insurance coverage requests into the regular mail and then informing clients their requests would be acted upon, was anything other than ordinary negligence. We find KLR’s actions did not rise to the level of the “special circumstances” necessary for an award of general damages.
The record shows Mr. Prest did not even discuss this aspect of damages when he testified. Instead, his wife, Denise Prest, testified her husband suffered a number of sleepless nights and was on edge towards her and her child. She indicated Mr. Prest resorted to alcohol as self-medication to relieve his stress, and eventually visited a general practitioner who prescribed “minor things.” Mr. Prest never sought professional help or participated in counseling or therapy. Moreover, Mrs. Prest did not separate the stress her husband felt based on Citizens’ actions in refusing to pay the requested policy limits from KLR’s negligence, or from his general distress over the damage to his property and the devastation suffered by the entire region. While we do not doubt Mr. Prest experienced disappointment, inconvenience and stress in trying to recover what he believed were his proper | ^insurance policy limits, the record does not establish he suffered more than the level of distress *1090 people in southern Louisiana experienced in the aftermath of Hurricane Katrina.
The record shows KLR made several attempts after Hurricane Katrina to follow-up on the two policy limit increase requests. In addition, KLR sent to Citizens its file showing policy limit increases had been twice requested by the client, that KLR had in its possession forms showing such requests were made, and that KLR was in possession of a confirmation receipt showing Citizens received the first request. This documentation was considered by Citizens in its decision to ultimately settle this claim for the requested policy limits.
Although we acknowledge general damage awards are possible for claims of mental anguish without physical injury, we find the evidence presented here was insufficient to show Mr. Prest was entitled to receive a- general damage award. The trial court abused its discretion in awarding general damages to Mr. Prest. Consequently, we reverse this aspect of the trial court’s judgment.

Special Damage Award

KLR asserts Plaintiffs did not specifically plead loss of use of the insurance proceeds or claim attorney fees against KLR, precluding an award of special damages for these items. Additionally, KLR argues there is no statutory basis for an award of attorney fees against an insurance agent and claims the award of attorney fees is essentially a bad faith award against KLR when Citizens was actually at fault.
“Special damages are those which either must be specially pled or have a ‘ready market value,’ i.e. the amount of damages supposedly can be determined with relative certainty.” Wainwright v. Fontenot, 2000-0492, p. 5 (La.10/17/00); 774 So.2d 70, 74. La. C.C.P. art. 1154 provides for the expansion of the pleadings to conform to the evidence presented:
11fiWhen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be, made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be sub-served thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence.
In the Petition for Damages, the Plaintiffs sought from Citizens “... the full amount of their damages, including damages for breach of contract, damages for tortious acts [identified in the petition], and for penalties under the Insurance Code.”[6] Plaintiffs’ claims against KLR were alternatively pleaded, in the event adequate insurance was not found to be in place on their property. The Petition for Damages prayed for judgment in Plaintiffs’ favor, against all of the named defendants,
jointly and severally, for all damages that are reasonable in the premises, for legal interest thereon from the date of the breaches of contract for the contractual and quasi-contractual claims, and *1091 from the date of judicial demand for all other claims, for statutory penalties and reasonable attorney fees to the extent provided by law, for all costs of these proceedings, and for such other legal, general and equitable relief as is appropriate under the circumstances.[7]
In addition to these statements, Plaintiffs provided a specific breakdown of the damages-they sought against KLR. Before trial, Plaintiffs provided KLR with documents outlining the attorney fees expended in its litigation against Citizens. Plaintiffs made clear they were not seeking attorney fees for the portion of the litigation against KLR, but only the amounts they were forced to expend in the two and a half years they spent litigating their claim against Citizens. Plaintiffs also |17provided KLR with calculations of interest on the difference between what Citizens initially paid under the policy and the increased policy limits requested by Plaintiffs. In addition to the pre-trial discovery, Plaintiffs included a comprehensive break-down of the damages they sought in their post-trial brief, and formally moved for an amendment of the pleadings to conform to the evidence at trial, including the consideration of special damages.[8] Under these circumstances, we find the pleadings were properly expanded to conform to the evidence presented. KLR’s procedural objection in this regard has no merit.
KLR’s negligence entitled Plaintiffs to recover “the loss[es they] sustained] as a result of the agent’s failure to procure the desired coverage.” Karam, 281 So.2d at 780. Plaintiffs claim they suffered damages due to the long delay in receiving the full amount of their insurance proceeds. These damages included the loss of use of their money for almost three years and the fact they were forced to litigate their claims against Citizens.
KLR argues Plaintiffs sustained no losses because Citizens ultimately settled with Plaintiffs for the full amount of the contested insurance policy proceeds. The record shows, contrary to KLR’s argument, Citizens never acknowledged its liability to Plaintiffs. The fact that Citizens ultimately settled the lawsuit against it for the increased coverage limits does not mean the requested insurance coverage was, somehow retroactively, procured. Nor does the ■ settlement negate the fact that Plaintiffs suffered additional damages, beyond the policy limits of their insurance coverage. Plaintiffs were still obliged to file suit and participate in contentious litigation in order, to recover policy limits they believed they already had, but did not, due to KLR’s negligence either in failing to ensure coverage was actually bound, or in failing to alert Plaintiffs they were not covered in the requested amounts.
|1sIn this case, “... the injured party’s patrimony was diminished to the extent that he was forced to recover against outside sources and the diminution of patrimony was additional damage suffered by him.” Bozeman, 2003-1016, p. 10; 879 So.2d at 699, citing Bryant v. New Orleans Public Serv. Inc., 406 So.2d 767, 768 (La.App. 4 Cir.1981).[9] Consequently, the interest on the amount of insurance proceeds in dispute and the attorney fees expended in litigating the case against the insurance company (and not the attorneys fees expended in the litigation against KLR) were the proper measure of damages sustained by Plaintiffs for the negligence of KLR.
*1092 To the extent KLR argues the lack of a statutory basis for the award of attorney fees as special damages, we find this particular argument was not raised in the court of appeal and KLR has, therefore, waived it. Dean v. Southmark Constr., 2003-1051 p. 6 (La.7/6/04); 879 So.2d 112, 116. Even if we were to address this argument, we would find it mer-itless. Plaintiffs do not need a contractual or statutory basis for the attorney fees claimed as special damages. The attorney fees they seek are not for the present litigation against KLR, but are recompense for the litigation made necessary against Citizens.
We find no abuse of discretion in the trial court’s award of special damages, as amended by the court of appeal.
CONCLUSION
For the foregoing reasons, we affirm the determination of KLR’s negligence, finding KLR failed to exercise reasonable diligence in attempting to procure increased insurance policy coverage in August 2005. We find the trial court abused its discretion in awarding general damages in this case and reverse that award. We affirm the trial court’s award of special damages, as amended by the court of appeal.
Jjg AFFIRMED IN PART; REVERSED IN PART
VICTORY, Justice, concurs in part and dissents in part and assigns reasons.
GUIDRY, Justice, concurs in part and dissents in part, and assigns reasons.

. Suit was also filed against Insurance Underwriters, Ltd. All claims against this defendant were dismissed with prejudice in a judgment granting the insurer’s motion for summary judgment on April 3, 2008.

. Plaintiffs argue the error on the July 2005 form could have led Citizens to overlook the request because it was not accompanied by payment. Testimony at trial contradicted that argument. Murden testified the body of the written request would have informed Citizens of the proper nature of the communication, and not the single-line characterization of the request. The underwriting manager for Citizens who testified was not questioned about this error or its possible effect on the request.

. KLR used certified mail for the July 2005 request. As a result, KLR received a confirmation receipt in the mail. We do not intend to limit the type of communications used between insurance agencies and insurance companies to certified mail. However, we note that an email confirmation or other type of delivery notification would suffice.

. See City of New Orleans v. Grand Lodge of Independent Order of Odd Fellows, 241 So.2d 7, 10 (La.App. 4 Cir.1970) (corporations are incapable of suffering emotionally).

. See Vol. 2, p. 288 ("Plaintiff's Pre-Trial Brief”); Vol. 3, p. 474-475 ("Plaintiff’s Post-Trial Brief”). Mr. Prest does not urge, and the facts of the present case do not come within the general rule of recovery for the independent tort of negligent infliction of, or the intentional infliction of, emotional distress. In order to recover for intentional infliction of emotional distress, a plaintiff must establish "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.” White v. Monsanto Co., 585 So.2d 1205, 1209 (La.1991).

. Vol. 1, p. 17, ¶ 13.

. Vol. 1, p. 18.

. Vol. 3, p. 516.

.KLR’s argument regarding special damages also includes an aspect of prohibited double recovery.