Judge Edwin A. Lombard
The Appellant, Botsay Insurance Network, Inc. ("Botsay") seeks review of the September 5, 2017 judgment of the district court rendered in favor of Appellee, Upscale Fashions, Inc., d/b/a Upscale Men's Clothing ("Upscale") and awarding Upscale $59,907.96, less an offset amount of $11,421.78, totaling $48,486.18. Additionally, Upscale, in its Answer to Appeal, seeks review of that portion of the district court's judgment offsetting its award of damages. For the reasons that follow, we find that the Answer to Appeal of Upscale has merit. We vacate that portion of the district court's judgment offsetting the award of damages. Furthermore, we affirm the judgment of the district court in all other respects, finding no manifest error.
Facts and Procedural History
Established in 2001, Upscale is a retail clothing company operating out of a leased property in New Orleans. The president *787 and owner of Upscale is Ahmed Sara ("Mr. Sara"). Mr. Sara's son, Qasem Sara ("Qasem"), serves as the treasurer and vice-president of Upscale. Qasem testified that he handled the day-to-day operations of Upscale.
In June 2004, Upscale purchased a property insurance policy, policy number # 65247 ("the Original Policy"), with Underwriters at Lloyd's of London ("Lloyd's") through Botsay. Insurance agent and Botsay employee Darlyn Prendegast handled Upscale's file. The Original Policy included wind and hail coverage. The Original Policy was renewed in June 2005 with the same coverage. However, at Botsay's request, the term of the June 2005 Original Policy was reduced to less than one year, ending on February 11, 2006.
Lloyd's broker, N-Surance Outlets, Inc., faxed a renewal offer to Botsay for Upscale's policy on January 24, 2006, noting the Original Policy "as expiring" on February 11, 2006.[1] It is contested as to whether Botsay communicated to Upscale's officers that the Original Policy was up for renewal prior to February 11, 2006. The Original Policy lapsed on February 11, 2006. It is also contested as to whether Upscale's officers were informed by Botsay's employees that the Original Policy lapsed.
Botsay subsequently secured another property insurance policy with Lloyd's ("the Replacement Policy") for Upscale in May 2006, bearing policy # 66702; however, the Replacement Policy did not include wind and hail coverage. Qasem was contacted by a Botsay employee and informed that a premium for Upscale's property coverage was due. It is contested as to whether Botsay's employees explained to Upscale's officers that: 1) wind and hail coverage were not included in the Replacement Policy; and 2) the Replacement Policy was not a renewal of the Original Policy.
Thereafter, Mr. Sara arrived alone at Botsay's office on or about May 11, 2006, to tender payment for Upscale's property coverage. Mr. Sara's first language is Arabic. He is not an English speaker, nor does he read English. Mr. Sara was asked to sign a facsimile from N-Surance to Botsay underneath a "remarks" section which stated "note wind/hail excluded." Mr. Sara signed the facsimile as requested.[2] Botsay bound the Replacement Policy for Upscale shortly thereafter.
On August 18, 2006, Upscale's leased premises sustained roof and water damage as a result of a windstorm. Upscale promptly notified Botsay of its loss in order to make a claim with Lloyd's. Botsay did not notify Lloyd's of the loss until January 2008, via facsimile of a Property Loss Notice form. Furthermore, Botsay did not inform Upscale that wind and hail coverage was excluded from the Replacement Policy when Upscale notified Botsay of the claim. Instead, Ms. Prendegast encouraged Upscale to seek relief through its landlord and the landlord's insurer. Ultimately, Botsay submitted the Property Loss Form to Lloyds, as stated above, 17 months after the damages were sustained to Upscale's property.
On August 18, 2008, Upscale filed a Petition for Damages against Lloyd's for failing to pay an insurance claim under policy *788 number 66702, the Replacement Policy, for the damages Upscale sustained. Lloyd's was eventually dismissed from the lawsuit on summary judgment.
Upscale twice amended its petition for damages. Initially, it filed an Amended Petition for Damages on September 9, 2008, to add Ming Cheng Realty, Inc., as a defendant.[3] Later, on February 11, 2009, it filed a Second Amended Petition to add Botsay as a defendant. Subsequently, Botsay filed an Exception of Prescription against Upscale, which was denied by the district court on April 8, 2013.
A bench trial was held on May 10, 2017, wherein Mr. Sara, Qasem and insurance agent expert Ronald L. Passons testified on behalf of Upscale.[4] Additionally, Botsay's witnesses were employee Maria Matute Simmons ("Ms. Simmons") and the owner of Botsay, Barbara Botsay ("Ms. Botsay"). After taking the matter under advisement, the district court rendered judgment in favor of Upscale, finding that it established the following by a preponderance of the evidence:
• Botsay agreed to procure insurance for Upscale;
• Botsay failed to use reasonable diligence in attempting to place wind and hail coverage for Upscale; and
• Botsay's actions warranted an assumption by Upscale that it was properly insured.
The district court further determined that Botsay was liable to Upscale for the amount of the loss of $59,907.96, less an off-set amount of $11,421.78. Thus, Upscale was awarded $48,486.18 with interest.
Botsay timely filed the instant appeal. It raises three (3) assignments of error:
1. The district court erred in finding that Upscale established that Botsay was negligent and in awarding damages;
2. The district court erred in concluding that Botsay failed to use reasonable diligence; and
3. The district court erred in finding that this case was not prescribed.
Standard of Review
Appellate courts "may not set aside a trial court's or a jury's finding of fact in the absence of 'manifest error' or unless it is 'clearly wrong.' " Rosell v. ESCO , 549 So.2d 840, 844 (La. 1989). The Louisiana Supreme Court has established a two-part test for the reversal of a factfinder's determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
Stobart v. State through Dep't of Transp. & Dev ., 617 So.2d 880, 882 (La. 1993). Under a manifest error standard of review, appellate courts do not focus on whether the trier of fact was right or wrong, but on whether the fact-finder's conclusion was a reasonable one. Clay v. Our Lady of Lourdes Regional Medical Center, Inc ., 11-1797, p. 11 (La. 5/8/12), 93 So.3d 536, 543 (citation omitted). Moreover, where there are conflicts in testimony, the Rosell court explained that "reasonable evaluations of credibility and reasonable inferences of fact should not *789 be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." 549 So.2d at 844.
Negligence and Reasonable Diligence
We shall combine our discussion of the first two assignments of error as both issues are related to the district court's reliance upon the testimony of Upscale's witnesses in finding Botsay was negligent.
In Botsay's first assignment of error, it asserts that the district court erred in finding that Upscale established that Botsay was negligent and in awarding damages. Botsay asserts that the district court overlooked the fact that Upscale's corporate officers chose not to renew the Original Policy in February 2006. Relying upon the testimony of Ms. Simmons and Ms. Botsay, Botsay contends that Upscale opted not to renew the Original Policy at issue because Upscale's officers were focused on a pending claim from Hurricane Katrina. Botsay contends that it took measures to inform and succeeded in informing Upscale's officers in person that the Original Policy was expiring in February 2006. Ms. Botsay testified that the U.S. mail was unreliable following Hurricane Katrina, and Upscale's officers were difficult to reach. It further asserts that Upscale only sought the Replacement Policy after its Hurricane Katrina claim was settled.
Despite the fact that Upscale claims that Mr. Sara was not fluent enough in English to understand what he signed in May 2006, Botsay maintains that Upscale's corporate officers knew that on May 15, 2006, that a new policy was being bound that excluded wind and hail coverage. In addition to signing the policy quote, Botsay asserts that Mr. Sara signed a commercial insurance application. Botsay portrays Mr. Sara as an experienced businessman having been in business since 2001. Botsay argues that Mr. Sara has been involved in making both operations and insurance coverage decisions for Upscale. Considering that Upscale allegedly allowed its insurance policy to lapse and the case is prescribed, Botsay asserts that the district court erred in awarding damages in this matter.
Additionally, in its second assignment of error, Botsay asserts that the district court erred in concluding that it failed to use reasonable diligence in procuring property coverage for Upscale. Characterizing Upscale's officers as insurance savvy individuals, Botsay maintains that Upscale's officers "knowingly and affirmatively refused to renew the Original Policy in February 2006" when they were asked in person if they wanted to renew the policy. Again, Botsay reiterates that the Saras were more concerned with the resolution of Upscale's pending Katrina claim than renewing the policy at issue. Botsay argues that Upscale's officers were disinterested in renewing the Original Policy because the new premium was more costly.
Botsay asserts that it fulfilled its duty of reasonable diligence to Upscale because Botsay employees informed Upscale's officers in person that its property insurance policy was expiring; yet, Upscale's officers opted to let the policy lapse and failed to pay policy premiums for three months, from February to April 2006. Additionally, it avers that Mr. Sara did not bring an Arabic interpreter to Botsay's office in May 2006, and he regularly conducted business for Upscale. Botsay asserts that it reasonably relied on Mr. Sara's signature when it bound the Replacement Policy. Moreover, Botsay alleges that it relied on Qasem's words and actions that he did not want to renew the Original Policy. Ultimately, Botsay avers that the district court erred in relying upon Upscale's version of facts over its own, claiming that it *790 upheld its duty of reasonable diligence toward Upscale.
Three factors must be established in order for plaintiffs to recover for losses resulting from an insurance agent's failure to procure insurance coverage: (1) an undertaking or agreement by the insurance agent to procure insurance; (2) failure of the agent to use reasonable diligence to obtain insurance and to notify the client promptly of the absence of coverage; and (3) actions by the agent which warranted the client's assumption that he was insured in the amount of the desired coverage. J & M Pile Driving, LLC v. Chabert Ins. Agency, LLC , 17-0126, p. 4 (La. App. 1 Cir. 10/25/17), 233 So.3d 43, 46 (citing Prest v. Louisiana Citizens Property Ins. Corp ., 12-0513, p. 8 (La. 12/4/12), 125 So.3d 1079, 1085-86 ).
The Louisiana Supreme Court has explained that "[t]he nature of certain professions is such that the fact of employment does not imply a promise of success, but an agreement to employ ordinary skill and care in the exercise of the particular profession." Roger v. Dufrene , 613 So.2d 947, 949 (La. 1993) (citing Phelps v. Donaldson , 243 La. 1118, 150 So.2d 35, 37 (1963) ). The duty imposed upon the insurance agent, upon whose advice a client depends, "is that of 'reasonable diligence' a breach of which duty results in an action in negligence." Id. Thus, a determination as to whether an insurance agent exercised reasonable diligence is central to a district court's review of whether an insurance agent was negligent.
An agent fulfills the duty of "reasonable diligence" when he or she procures the insurance requested. Isidore Newman Sch. v. J. Everett Eaves, Inc ., 09-2161, p. 7 (La. 7/6/10), 42 So.3d 352, 356 (citation omitted). Moreover, the Louisiana Supreme Court has further held that an insurance agent is also responsible for notifying a customer when the agent was unable to procure the desired coverage:
An insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested insurance.
Karam v. St. Paul Fire & Marine Ins. Co ., 281 So.2d 728, 730-31 (La. 1973).
The district court was presented with conflicting testimony as to whether Botsay fulfilled its obligations to Upscale. Ms. Simmons testified that Qasem verbally informed her on February 10, 2006, that he did not want to renew the Original Policy because he was focused on receiving payment for Upscale's Hurricane Katrina claim. She further testified, in a 2016 deposition, that Qasem was disinterested in the renewal quote because he was unsure if Upscale would be in business and that Upscale was open at that time.[5] Furthermore, during the examination of Ms. Botsay it was revealed that the N-Surance quote of January 24, 2006, advising that the Original Policy was expiring on February 11, 2006, was not included in the business records subpoenaed from Botsay.
Qasem, however, testified that Mr. Sara went to Botsay's office in May 2006, to pay the renewal premium for the Original Policy. He stated that no one from Botsay called to advise him in either January or *791 February 2006, that the Original Policy was going to expire, nor did he receive a notice in the mail from Botsay. He further explained that he heard from a Botsay employee later in 2006, when he was called to make a premium payment for property insurance coverage. He testified that he sent Mr. Sara to Botsay's office with a check to make the payment. He explained that Mr. Sara does not speak or read English, but does speak Arabic. Qasem testified that he would often serve as his father's interpreter.
Additionally, he testified that he and his father jointly reviewed insurance policies and made decisions. Nevertheless, he and Mr. Sara did not discuss the policy at issue in May 2006. He explained that Upscale's 2004 and 2005 property policies included wind and hail coverage, which were important for Upscale to have.
He explained that in December 2005, Upscale increased its inventory coverage on the Original Policy from $100,000 to $200,000, because the business was still in operation. After reopening following Hurricane Katrina, Upscale's store was filled with merchandise as a result of the demand for clothes in New Orleans post-Hurricane Katrina.
Moreover, Qasem related that he was unaware of a three-month gap in Upscale's property coverage from February 2006 thru April 2006, because he neither received a premium notice in the mail nor was he informed of the gap. He testified that Upscale made a wind claim under its property policy (the Replacement Policy) in August 2006, by reporting the claim to Botsay. He testified that the Botsay representative he spoke with advised that Upscale's landlord would be responsible for any damages because the roof was compromised. After discovering that the landlord was not responsible, Qasem followed up with Botsay to find out the status of the wind claim. He explained that it was always his belief that Upscale had wind and hail coverage. Lastly, he stated that when he submitted photographs and a list of damaged items to Botsay for the August 2006 claim, he was not informed that Upscale did not have wind coverage.
Mr. Sara testified that when he arrived at Botsay's office to renew the Original Policy, he tendered a check and was given a paper to sign, which he did. He further related that no one at Botsay explained what he was signing and no one there spoke Arabic. He testified that he does not understand English and relies upon his children and others to explain or translate for him.
Mr. Passons was accepted by the district court as an insurance agency expert. He explained that it is the duty of an agent, upon receipt of an offer to bind coverage from a broker, to notify the insured in writing of coverages and premiums offered by the broker. Additionally, he testified that it is improper for an insurance agent to notify a company, or officer of a company who is a non-English speaker, that a policy being purchased excluded wind and hail coverage without offering a verbal explanation. He elaborated that in such an instance it is the legal duty of the agent to send a written explanation to the insured.
In his testimony, Mr. Passons opined that Botsay failed to notify Upscale immediately after the August 2006 loss that it did not have wind and hail coverage, rather it advised Upscale's officers to contact its landlord's insurer. Botsay, he testified, did not notify N-Surance of Upscale's loss until January 3, 2008, via facsimile. The record reflects that the January 3, 2008 facsimile from Botsay states that the date of loss for Upscale's claim is August 2006.
Lastly, Mr. Passons further explained that the normal coverage period for a *792 property insurance policy is one year. He noted that both Upscale's 2004 and 2005 property coverage policies covered a one-year period. As previously noted, the term of the 2006 policy, however, was shortened in order to coincide with the term of Upscale's liability policy, with Wellington Specialty Insurance Company, at Botsay's request. He testified that an insured would not expect that a policy renewal is going to occur in a shorter time period.
After considering the testimony in this matter, the district court reasoned that the witnesses for Upscale were more credible. As noted above, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. "Because the fact finder is best aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said, when there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review..." Jacobs v. Reg'l Transit Auth ., 03-2158, p. 4 (La. App. 4 Cir. 4/14/04), 872 So.2d 571, 574 (citations omitted).
The district court in this matter not only evaluated the demeanor of the witnesses, but also questioned some of the witnesses itself. The testimony adduced at trial formed a reasonable basis for the district court to conclude that:
1) Botsay was obligated to procure property insurance coverage for Upscale that included wind and hail coverage;
2) Botsay failed to use reasonable diligence to notify Upscale's officers that its Original Policy was lapsing sooner than May 2006- leaving Upscale without any property coverage for a three-month period- and to make clear to Upscale's officers that the Replacement Policy Botsay obtained a quote for did not include wind and hail coverage; and
3) Botsay's actions (and/or inactions) warranted the assumption of Upscale's officers that Upscale was insured in the amount of the desired coverage, as evidenced by the actions of Upscale's officers following the August 2006 windstorm.
Considering the district court's reliance upon the testimony of the witnesses' for Upscale and recognizing the great deference given to the district court's factual findings based on credibility determinations, we cannot say that the district court was manifestly erroneous in determining that Botsay failed to exercise reasonable diligence, and therefore, was negligent. For these reasons, we find that these assignments of error are without merit.
Prescription
Relying upon La. Civ. Code art. 3492, Botsay argues that Upscale's case prescribed on May 15, 2007. Article 3492 of the Louisiana Civil Code states:
Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage.
Botsay maintains that the May 11, 2006 insurance quote document for the Replacement Policy was signed on May 15, 2006, by Mr. Sara, and this quote did not contain wind and hail coverage, as Upscale asserts it should have. Asserting that Upscale untimely added Botsay as a defendant in February 2009, Botsay avers that it was *793 added as a defendant approximately three years after Upscale was aware that its new property policy did not contain wind and hail coverage. Thus, Botsay asserts that Upscale's Second Amended Petition is prescribed on its face.
In response, Upscale asserts that La Rev. Stat. 9:5606, which applies to claims against insurance agents, such as Botsay, is controlling. La. Rev. Stat. 9:5606, entitled Actions for professional insurance agent liability, states:
A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
C. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.
D. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
Upscale avers that it timely filed suit against Botsay under the statute's one-year and three-year prescriptive periods.
We review de novo a judgment granting an exception of prescription because it raises a legal question. M.R. Pittman Grp., L.L.C. v. Plaquemines Par. Gov't , 15-0860, p. 10 (La. App. 4 Cir. 12/2/15), 182 So.3d 312, 319. "Statutes governing prescription are strictly construed against prescription in favor of the obligation sought to be extinguished; therefore of two possible constructions, that which favors maintaining, as opposed to barring, an action should be adopted." Asbestos v. Bordelon, Inc ., 96-0525, p. 85 (La. App. 4 Cir. 10/21/98), 726 So.2d 926, 974 (citing Lima v. Schmidt , 595 So.2d 624 (La.1992) ).
In denying Botsay's exception of prescription at a March 22, 2013 hearing, the district court reasoned that Upscale did not discover sufficient facts that would give rise to actionable negligence until it received Botsay's return from a subpoena duces tecum in January 2009. The district court held that Upscale's claim against Botsay was timely filed, noting that Upscale filed its Second Amended Petition the following month, in February 2009.
The prescriptive periods set forth in La. Rev Stat. 9:5606 are controlling. In the instant matter, the prescriptive period began to run when Upscale discovered or should have discovered that the Original Policy lapsed on February 11, 2006. Although Botsay asserts that Upscale's officers discovered or should have discovered the alleged negligence in May 2006, there is no evidence to suggest that Upscale's officers were aware at that time that Upscale did not have the desired coverage. Indeed, the testimony adduced at trial indicates that the officers of Upscale still believed that the business had wind coverage when its building was damaged in *794 August 2006, and thereafter when they reported their loss to Botsay. Furthermore, there is no evidence to dispute that Upscale knew prior to January 2009, that the Original Policy lapsed and/or that the Replacement Policy did not include coverage for wind and hail.
As the district court noted, Upscale filed its Second Amended Petition for Damages adding Botsay as a defendant on February 11, 2009, the month after receiving the return from Botsay's subpoena duces tecum. Upscale timely filed its amended petition within one year of the date of discovery of that the Original Policy lapsed, and within three years of said date, on February 11, 2009. Thus, we find that this assignment of error is without merit.
Answer to Appeal
In its Answer to Appeal, Upscale asserts that the district court erred in reducing its award of damages by $11,421.78. The Judgment states that the $59,907.96 award of damages was being reduced by an offset amount of $11,421.78. Upscale asserts that the district court erroneously made this reduction based upon trial testimony. Upscale asserts that no exhibits were introduced at trial by Botsay evidencing that it received this amount. Upscale notes that through the questioning and testimony of various witnesses, the amount Upscale allegedly received under the Replacement Policy as a result of its August 2006 claim ranged from approximately $11,000 to $11,421.78, with the latter amount being mentioned during questioning by Botsay's counsel to Mr. Sara. Lastly, Upscale contends that Lloyd's would not tender any monies to Upscale for wind damage under a property policy excluding wind coverage. We agree.
In the matter sub judice, the trial transcript reflects that no exhibits- such as check stubs, bank account statements, or other business records- were introduced by Botsay reflecting that Lloyd's tendered $11,421.78, or any amount to Upscale.
Moreover, the transcript reflects that there was inconsistent testimony introduced at trial as to the amount that Upscale allegedly received for the August 2006 claim. For instance, Ms. Simmons testified that Upscale received "$11,000 and some cents," but later stated that Upscale received more than $10,000. Ms. Botsay testified that Upscale received "$11,000-something."[6]
Under the abuse of discretion standard, "the question is not whether a different award might be more appropriate, but whether the award of the trial court can be reasonably supported by the evidence and justifiable inferences from that evidence." Bitoun v. Landry , 302 So.2d 278, 279 (La. 1974). In this instance, there is an absence of reasonable support for the district court's reduction of Upscale's award of damages.
Louisiana Code of Civil Procedure Article 2164 states, in pertinent part, "[t]he appellate court shall render any judgment which is just, legal, and proper upon the record on appeal." Therefore, considering the lack of evidence and inconsistent testimony presented as to whether Upscale received any monies under the Replacement *795 Policy, we find that the district court abused its discretion in offsetting Upscale's award of damages. Accordingly, we vacate that portion of the district court's judgment offsetting Upscale's award by $11,421.78.
DECREE
For the foregoing reasons, we find that the Answer to Appeal of Upscale Fashions, Inc., d/b/a Upscale Men's Clothing has merit. Thus, that portion of the judgment of the district court offsetting Upscale's damages by $11,421.78 is vacated. Botsay Insurance Network, Inc., is liable to Upscale for the full amount of its loss, $59, 907.96, with interest from the date of judicial demand. In all other respects, the September 5, 2017 judgment of the district court is affirmed.
JUDGMENT VACATED IN PART AND AFFIRMED

The designation "as expiring" means that the renewed policy would have the same coverage as the policy that is expiring, according to the deposition testimony of N-Surance representative Gregory Murrey.

At trial, Botsay employee Maria Matute Simmons testified that Qasem, not Mr. Sara, signed the facsimile with Mr. Sara's name. Qasem, via his testimony, disputes that this occurred.

Ming Cheng Realty was later dismissed from the lawsuit.

Mr. Sara testified with the assistance of an Arabic interpreter, Jumanah Hamide. Additionally, Ms. Prendegast passed away prior to the trial being held.

During her deposition, Ms. Simmons refreshed her recollection as to the events that transpired in 2006, by reviewing notes that she drafted in 2009, after Botsay was served with Upscale's amended petition for damages. Her notes were attached to the deposition as an exhibit. Her notes also indicate that Ms. Prendegast was not at work from January 2006 thru April 2006, due to surgery.

We further note that trial exhibit list for Botsay includes an exhibit 8 described as "proof of claims paid to plaintiffs 8/06 and Katrina losses." Nevertheless, this exhibit was not introduced at trial. Upscale objected to the Botsay's exhibit list in a post-trial memorandum dated July 12, 2017. Appellate courts are courts of record and may not review evidence that is not in the appellate record, or receive new evidence. Denoux v. Vessel Mgmt. Servs., Inc ., 07-2143, p. 6 (La. 5/21/08), 983 So.2d 84, 88. We will not consider this exhibit as it was not introduced and admitted at trial.